CFK

JS 44 (Rev 06/17)

# CIVIL COVER SHEET

19-2221

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

19  2221

**I. (a) PLAINTIFFS**
Steffany Purvis

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Law Offices of Sommer Miller
2 Bala Plaza Ste 300 Bala Cynwyd PA 19004

**DEFENDANTS**
Progressive Insurance

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*  Click here for Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII
Brief description of cause:
Employment Discrimination

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE 5/22/19
SIGNATURE OF ATTORNEY OF RECORD /s/ Sommer Miller

MAY 22 2019

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

CFK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

19    2221

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: **1612 Whitepain Hills Blue Bell Pennsylvania 19422**

Address of Defendant: **5165 Campus Drive Suite 100 Plymouth Meeting PA 19462**

Place of Accident, Incident or Transaction: ___

---

**RELATED CASE, IF ANY:**

Case Number: ___   Judge: ___   Date Terminated: ___

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [✓]

I certify that, to my knowledge, the within case [ ] is [✓] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **5/22/19**   Attorney-at-Law / Pro Se Plaintiff   Attorney ID # (if applicable): **315971**

---

**CIVIL:** (Place a ✓ in one category only)

A. **Federal Question Cases:**
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [✓] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases (Please specify) ___

B. **Diversity Jurisdiction Cases:**
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury (Please specify) ___
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases (Please specify) ___

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, **Sommer Miller**, counsel of record or pro se plaintiff, do hereby certify:

[✓] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs

[ ] Relief other than monetary damages is sought

MAY 22 2019

DATE: **05/22/2019**   Attorney-at-Law / Pro Se Plaintiff   Attorney ID # (if applicable): **315971**

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

CFK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
|  | : | NO. 19 2221 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (✓)

| 5/22/19 | Sommer Miller | Steffany Parvis |
|---|---|---|
| Date | Attorney-at-law | Attorney for |
| 215-473-4353 | 215-473-4354 | sommer@smillerlegal.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

**MAY 22 2019**

The Law Offices of Sommer Miller, LLC
2 Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
Telephone: 215-473-4353
Fax: 215 -473-4354
www.smillerlegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| **Steffany Purvis** | ) |
| **Plaintiff,** | ) Case No. |
| | ) |
| V. | ) Jury Trail Demanded |
| | ) |
| **Progressive Insurance Limited.** | ) |
| **Defendant.** | |

## Complaint and Jury Demand

Now comes Plaintiff, by and through his Counsel, and for Complaint against the Defendant, states as follows:

### I. PARTIES AND JURISDICTION

1. At all times relevant hereto, the Plaintiff **STEPHANY PURVIS** has resided in Whitepain Hills, Blue Bell and is a citizen of Pennsylvania.

2. At all material times relevant hereto the Defendant **PROGRESSIVE INSURANCE COMPANY** a corporation licensed and doing business in Pennsylvania, is and at all material times mentioned herein was an employer within the meaning of Title VII of the Civil Rights Act.

3. This Court has jurisdiction over this matter as this matter involves a Federal Question under Title VII of the Civil Rights Act. The Court also has supplemental jurisdiction over the State and City Causes of Action.

4. The Venue is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the Division in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

### II. STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

5. In or about April 4 2014 the Defendants hired the Plaintiff an African American female, as a Claims Adjuster for their Plymouth Meeting office, such position and its working environment gradually became suffocating, hostile, racist, discriminatory, retaliatorily which was compounded with blatant managerial and supervisory bullying and intimidation towards the Plaintiff until March 2019.

6. The working environment presented to the Plaintiff had an ongoing cultural of racist and discriminatory practices within the workplace which were regularly encourages by management.   Employees often openly engaged in harassing, insulting and defamatory statements about minorities and women in open areas and were not corrected by management to the contrary management often engaged in the offensive conduct. Some examples of such behavior are as follows:
     I. A white female employee announced to the call center, her coworkers and supervisors, she would not to speak to any Puerto Rican or Spanish speaking callers for the day.
     II. White employees gathering around an employee's desk to watch a video on loop of an African American teenager being struck by a car. The video was met with laughter and giggles to his injuries; sarcastic statements were made of the black boy's resilience, how quickly the black boy got back to his feet after being struck. Then the video would be replayed multiple times so the employees could count how many teeth were knocked out and laugh loudly. This was a private video that accompanied an insurance claim and was supposed to be viewed for claims purposes only. Both claims personal and supervisors watched and mocked the video.
     III. A murder of a young African American female was met also with laughter and sneers; white employees gathered around with their insensitive racist remarks, they quickly labeled the deceased "Keisha", they wondered sarcastically what "Keisha" could have done to deserve this.  The young murder victim was stabbed several times and ran over by a car by an estranged lover.  The staff, having labeled the victim, whose name was Angela as "Keisha" laughed and sneered regarding the young ladies fate. One employee was tasked at updating the staff of the news reels and when new information was released many employees huddled around her desk to laugh and sneer at the breaking news up until and including the time when the victim was finally reported as deceased by the news media. Both claims personal and supervisors watched and mocked the video. The Plaintiff was so upset by the display she left work early for the day.

     IV. The Plaintiff was informed by a manager "much isn't to be expected from the front desk staff they only get basic task as they

have little to no education, black women are stupid. The front desk staff consisted entirely of African American women.

7. The Plaintiff was never given any corrective action or otherwise "written up" during her 5 years of employment with the Defendant until she made several complaints to the relevant authorities at the Defendant's company and the Equal Employment Opportunity Commision "EEOC".

8. Despite having strong performance based on the analytical measures the Company used to judge work performance in 2015 the Plaintiff's first review she was told by her White manager that her work was subpar and she was not going to be promoted. The Plaintiff took the initiative to meet with the manager every 60 days for meetings seeking direct feedback expecting her work would improve to this manager's liking.

9. Meetings with the manager immediately became abrasive, abusive, condescending, discriminatory and intimidatory towards the Plaintiff. Over the course of a year the manager provided no written or verbal discipline, nor any corrective action toward the plaintiff's work product and acknowledged her work was being completed. However, he stated that "she would never be intelligent enough to be promoted under him" that she might as well resign or she could "keep banging her head against the wall in her current position."

10. When the plaintiff advised the supervisor that she had completed all the work that had been assigned and had strong reviews from employees and customers the Manager retorted "yes, you look good on paper but not everybody likes you."

11. The Plaintiff continued her work in her current position being denied an opportunity to seek employment in another department. Over the course of the next year Plaintiff received no written discipline, verbal discipline, nor negative feedback about her work product. The plaintiff continued to meet numerical production goals set by the employer.

12. Despite positive work performance in September of 2016 the Plaintiff met with the manager was told she "was not intelligent enough to remain in her current position and needed to be with other simple-minded people like herself".

13. The manager then demoted the Plaintiff to a department he claimed "had the level of work that was more on the Plaintiff's comprehension level". Stating that "she [plaintiff] had a simple train of thought and needed to be with others who had the same simple thought pattern and comprehension levels".

14 The plaintiff was demoted and sent to her new department and was not trained or given instructions for her new position. The Plaintiff was also required to continue the

workload from her former position. It appeared that this approach was intentional, hostile to make the Plaintiff fall behind in her work.

15. With assignments from both jobs, the Plaintiff was overloaded with working tasks that required coming in extra days to get the job done. The Plaintiff was not compensated for the additional time worked. Including Saturdays worked, scheduled by the supervisor, where other employees were given "Saturday pay".

16. When the Plaintiff complained that she was not paid her full compensation she was informed she was not entitled to additional pay. The Supervisor reasoned that additional payment including Saturday pay was a "pay practice not a pay policy" by the company. Indicating that only certain employees received payment for additional time worked.

17. In September of 2016 the Plaintiff reached out to the Defendants local Human Resources Representative, to make the necessary complaints about her hostile and discriminatory working environment and intimidation by her direct manager and supervisors. The HR representative discussed the private complaints the Plaintiff made with her husband and niece who worked in other departments and were not the subject of the complaint and other employees in the Plaintiff's department whom were not party to the complaints. Claiming these complaints were not confidential.

18. Immediately after lodging a complaint to HR the Plaintiff was informed Plaintiff she could not speak to another African American employee on the floor because she too had made a complaint of discrimination to HR before being transferred to that department. There were no restrictions in talking to any other employee.

19. In the Summer of 2017 due to the overbearing hostility, isolation and discriminatory environment at the Defendant's company the Plaintiff reached out the Defendant's company Ethic's officer to make her complaints known.

20. The Plaintiff was assigned to a new team pending the investigation whom would be supervising her remotely. The Plaintiff subsequently worked under a new manager and supervisor and had no negative performance reviews or complaints about her work. The new team worked from the Malvern office.

21. Immediately, after speaking to the Ethic's Officer, the Plaintiff was placed on a Performance Action Plan by the team in her current office. The plan stated that the Plaintiff's work needed to improve in 30 days or she would otherwise be terminated The reasoning given for the plan was that the Plaintiff had not checked all voicemails and

returned calls by 4 o'clock every day. When confronted with the computer reports showing all voicemails had indeed been checked the progressive supervisors admitted their data regarding voicemails was incorrect due to a glitch in the system but the Plaintiff was still being held accountable for not checking voicemails that the computer indicated had been checked. The Plaintiff's Malvern Team had no such requests or complaints.

22. Despite working a 7 am to 4 pm schedule for over four years the Plaintiff was informed that her schedule must change so that she now needed to work until 4:30. The plaintiff informed the Defendant she could not accommodate her childcare to meet that time as she is a single mother. The Plaintiff was told her hours were going to be changed soon despite her familial limitations. No other employees' schedules were changed, there were other scheduling changes made to the department or other reasons the plaintiff needed to work a different shift. The plaintiff was now reporting directly to the Malvern Team. The Malvern team had no requests that her schedule be changed.

23. The Plaintiff complained to HR in May 2018 and again in June of 2018 regarding the hostile treatment   The human Relations department failed to act.

24. In September 2018 the Plaintiff contacted the EEOC and met with them shortly thereafter. This meeting with the EEOC created a domino effect of further hostility and retaliation towards the Plaintiff by managerial, supervisory staff and other employees.

25. Immediately after filing the complaint the plaintiff was informed, she would be reporting to her original supervisor whom had called her stupid and whom she originally lodged the complaints against. The plaintiff expressed concern about reporting to a manager whom she had just made complaints about even though her new management team had no complaints about her work.

26. In December 5 2018, the Plaintiff wrote to corporate Human Resources about the constant intimidation and bullying tactics of her immediate Supervisor, whom was mentioned several times in the Plaintiff's EEOC complaint and was the subject of several complaints to HR. The Supervisor had become the consummate stalker. Every day he walked pass the Plaintiff in an intimidating manner giving her long furtive stares and hostile looks. The Plaintiff indicated she simply has had enough and isolated herself.

27. The situation at the Defendant's office quickly spiraled out of control. On December 6 2018, the Plaintiff indicated to corporate human resources that a white male whom she had never seen before, Mr Webb, was in the break room and Webb pulled out a drawer and hitting the Plaintiff in the upper part of her leg.

28. Shortly after in the same break room another employee, approached the Plaintiff yelling and coming toward her stating "Why are you mad at everybody. Are you mad at me?" Again, approaching the Plaintiff aggressively and stopping merely inches from her nose shouting, "What did I do to you? Why are you mad at me?"

29. The plaintiff later learned from another counterpart on her floor that again human resources had discussed the EEOC complaint with several employees who were not subject to the complaint. The Plaintiff was further informed that "everybody was mad at her for making complaints".

30. The hostility and intimidation towards the Plaintiff continued. Webb has walked by the desk of the Plaintiff staring her down about 10 times day. Webb had no work assignments in that area and there was no reason for Mr. Webb to be near the Plaintiff. The Plaintiff indicated how anxious and nervous she felt. How mentally draining she felt at the office and was not prepared for another attack by a white employee where she always had to defend herself. More so she felt she wasn't being taken seriously.

31. The Plaintiff emailed human resources several times between November and February complaining of the stalking, bullying and physical intimidation. Her complaints were ignored and employees were allowed to continue stalking and berating her.

32. In an effort to protect herself and as proof of evidence, the Plaintiff started taking pictures each time Webb passed her desk to stared her down.

33 Finally, after months of complaints and an email by the Plaintiff informing Human Resources, she had video and pictures of the incidents on 7 February 2019 human resources stated they would investigate this matter with Webb.

34. On February 19, 2019 human resources concluded her investigations with respect to Webb. Webb was no longer allowed to come back to the Plaintiff's side of the office and was told to use the breakroom on his side of the office. However, the plaintiff was given a verbal warning that if she recorded anyone else in the office she would be terminated. It was not expressed that Webb or the supervisor whom approached her in the breakroom received any such discipline for their actions.

35. In retaliation, of the Plaintiff's complaints, she was given
    I. workplace policies not to record other employees without their consent, as it violates policy.
    II an "action plan" for her allegedly poor performance at Defendant's place of business.
    III. Schedule changes for her times of work which she had worked for 5 years.
    IV. Refusal to work remotely from home.

    V. Instructions to improve her performance. (it is noted, the Plaintiff had instances she could work remotely before her complaints.)

36. In an effort to relieve herself of this hostile environment the Plaintiff applied for 33 jobs and inquired about job promotions away from her intimidators to which she was told such jobs are no longer available and or her Manager gave her a bad review so she could not transfer.

37. Progressive policy is such that your immediate manager must give you permission to apply for jobs within the company and leave your current position The plaintiff was denied an opportunity to be promoted or transferred over 33 times.

38. On September 20 2018 the Equal Opportunity Employment Commission issued a letter to sue.

39. Given the constant discrimination, hostility, demotion and retaliatory oppression by the Defendant, the Plaintiff's last day of work was March 20 2019.

## COUNT I

### RACE DISCRIMINATION UNDER TITLE VII

40. The allegations contained in paragraphs 1 through 39 inclusive are hereby incorporated by reference.
41. The Plaintiff an African American female is educated and intellectually qualified to work for and apply for applicable posts at the Defendant's company. Also given her work reviews she was a good candidate for a promotion and or raise.

42. The Defendants created an environment where they were in breach of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2

43. The Defendants created an environment where the Plaintiff was constantly berated, called an idiot, seen as a group of persons that were illiterate and uneducated and can only handle simple task or as Donohue called it red car blue car claims. The Plaintiff was told even though she had good numbers however she was not liked.

44. The Plaintiff was told that she would never be promoted or receive a raise under the watch of her direct manager Donohue and as such she was demoted.

45. During the time of the Plaintiff's employment the Defendant continually and intentionally and in a discriminatory manner refused to give the Plaintiff a promotion, raise and or transfer to another location.

46. This discrimination the Plaintiff felt left her isolated. The plaintiff constantly felt nervous and anxious due to the discriminatory atmosphere at the Defendant's company.

## COUNT II

### HOSTILE WORK ENVIRONMENT BASED ON RACE UNDER TITLE VII

47. The allegations contained in paragraphs 1 through 46 inclusive are hereby incorporated by reference.

48. During the Plaintiff's employment she endured a constant hostile working environment. The hostility was as a result of her race as it towards her and it formed part of the environment as it was directed towards other African American workers and clients.

49. The Plaintiff endured racial slurs, jokes and references and offensive and derogatory comments by her white superiors and other employees. Also unwarranted discipline, a demotion, and threat of termination. Such conduct was so pervasive and severe creating a hostile environment.

50. This hostility lasted approximately 4 years.

51. The Defendants continued to breach Title VII of the Civil rights Act of 1964, 42 U.S.C § 2000(e)

## COUNT III

### RETALIATION UNDER TITLE VII

52. The allegations contained in paragraphs 1 through 51 inclusive are hereby incorporated by reference

53. This hostility detrimentally affected the Plaintiff during her employment as it would have negatively impacted the average reasonable person.

54. Due to the Plaintiff's complaints of discrimination Donohue was constantly hostile, verbally abusive, condescending, and berated the Plaintiff as it related to her education and intelligence. This all resulted in the Plaintiff being demoted to another department.

55. The Plaintiff was demoted to this new department and was not given or afforded the necessary tools and or training to do the work.

56. The Plaintiff complaints to the EEOC, was met with severe verbal and physical abuse, intimidation and bullying by other white employees, managers and supervisors.

57. The Plaintiff felt isolated, uncomfortable, anxious and fearful in her working environment as she constantly wondered who would be next to confront her.

58. The Plaintiff believes that but for her complaints to the relevant authorities about the discrimination and hostility in the workplace she would have been promoted, given a raise and be able to continue to work remotely escaping discipline and demotion.

59. THE Defendants engaged in unlawful practices prohibited by Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C §e.

## COUNT IV

### SEX DISCRIMINATION UNDER TITLE VII

60. The allegations contained in paragraphs 1 through 59 inclusive are hereby incorporated by reference.
61. The Plaintiff was hired as a female Claims Adjuster approximately a year later she was demoted to another section as it was alleged, she was not qualified to do the job.

62. By subjecting plaintiff to a sexually hostile work environment on the basis of her gender, defendants violated the Fourteenth Amendment to the United States Constitution as made actionable pursuant to 42 U.S.C. §1983.

63. By subjecting plaintiff to a hostile work environment, quid pro quo harassment and discrimination, all on the basis of her gender, defendants violated the Pennsylvania Human Relations Act, as codified, 43 Pa. Cons. Stat. §§951-963

## COUNT V

### PROTECTED ACTIVITY UNDER TITLE VII AND FLSA

64. The allegations contained in paragraphs 1 through 63 inclusive are hereby incorporated by reference.

65. The Plaintiff made several verbal and written complaints to the Defendant's Company about the discrimination and hostility in the workplace. However, these private and confidential complaints verbal and written, formal and informal made by the Plaintiff were readily shared and discussed throughout the office by managers, supervisors and other employees.

## COUNT VI

## DISCRIMINATION- PENNSYLVANIA HUMAN RELATIONS ACT (PHRA)

66. The allegations contained in paragraphs 1 through 65 inclusive are hereby incorporated by reference.

67. As an African American female working at the Defendant's office the Plaintiff was discriminated against by way of her race. The Plaintiff has claims by way of PHRA 43 P.S §§ 955.

68. The Plaintiff was denied the opportunity to apply for a raise and or promotion.

69. The Defendant barred the Plaintiff from work opportunities, demoted, discriminated against the Plaintiff with respect to compensation, terms and conditions and privileges of employment.

## COUNT VII

### RETALIATION UNDER PHRA

70. The allegations contained in paragraphs 1 through 69 inclusive are hereby incorporated by reference.

71. Following the plaintiff's complaints to the Defendant's company and EEOC, the Plaintiff was then subjected to various adverse employment actions. These actions included hostility, physical and verbal abuse by workers, demotion, adverse write up, work force policies about video recording workers. The Plaintiff was also denied promotions and refusal to work remotely from office.

72. Most significantly the Plaintiff was continually subjected to work supervised by Donohue her intimidator.

73. The Plaintiff makes her claim under PHRA §955

## COUNT VIII

### RETALIATION UNDERT FAIR LABOR STANDARDS ACT

74. The allegations contained in paragraphs 1 through 73 inclusive are hereby incorporated by reference.

75. The Plaintiff was discriminated against because she filed a complaint with the EEOC in respect of her hostile working conditions at the Defendant's company. Such is in breech of the Fair Labor Standards Act 29 U.S.C.§ 209 S

76. The Plaintiff being employed for the past 5 years with the defendant company complained with respect to her hostile and discriminatory working environment with the

Defendant. The Plaintiff was later demoted and subjected to hostility and verbal and physical abuse by workers. She was also denied promotions and refusal to work remotely from home.

77. This hostility also resulted in failure give raise or promote resulting in economic injury to the Plaintiff due to the demotion.

## COUNT IX

### MENTAL AND EMOTIONAL DISTRESS

78. The allegations contained in paragraphs 1 through 77 inclusive are hereby incorporated by reference.

79. The Defendant's action describe herein were intentional and inflicted upon the Plaintiff severe mental and emotional distress.

80. The Plaintiff has suffered irreparable injuries including but not limited to loss of pay, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

## COUNT X
### WAGE AND HOURLY PAY VIOLATIONS

81. The allegations contained in paragraphs 1 through 80 are hereby incorporated by reference.

82. The Plaintiff was required to work several hours in addition to her 40 hour work week. Including coming into the office as early as 6 am several mornings and also working several assigned Saturdays.

83. The Defendant refused to pay the employee for these additional hours worked.

84. The Defendant compensated an entire department by awarding backpay for employees who worked those same hours, however refused to pay the defendant because she had been transferred at the time of the award. The employee worked those hours in that department at the time the pay was earned.

85. The Defendant has violated §7(e) of the Fair Labor Standards Act and is entitled to back pay plus 50% of said pay immediately.

## COUNT XI
### DEFAMATION

86. The allegations contained in paragraphs 1 through 85 are hereby incorporated by reference.
87. The Defendant engaged in a protected activity by reporting her ongoing harassment to the employer's Human Relations Department.
88. The human relations director shared the confidential information in the complaint with several parties whom should not have been party to the investigations. These parties included but were not limited to: other coworkers who were not managers, supervisors, or subject to any claims alleged, her family members some who worked for the Defendant in other departments unrelated to the complaint, several mangers whom were considering the Plaintiff for job promotions but were not party to the complaints.
89. When confronted, the HR employee stated the complaints were not private and she could discuss them if she chooses.
90. This activity is defamation under 42 Ps. C.S. §§8341-8345.

**WHEREFORE,** the Plaintiff respectfully prays to this Court as follows:

A. accept jurisdiction over this matter, including the pendent claim;
B. empanel a jury to hear and decide all questions of fact;
C. award Judgement against the Defendant.
D. award to plaintiff compensatory damages of $2,500,000 against the defendant.
E. award to plaintiff punitive damages of $500,000 against defendant Defendant for his malicious and spiteful pattern of sexual harassment;
F. award the plaintiff Back pay, front pay and an additional 50% of the unpaid overtime
G. Liquidated damages pursuant to 29 U.S.C. §626(b);
H. Liquidated Damages pursuant to 43 Pa. Cons. Stat. §§ 951-963
I. For all compensatory and punitive damages with respect to the statutory claims in an amount being just.
J. For reasonable costs, including attorney's fees
K. For all other equitable and legal relief to which the Plaintiff appears entitled.

### DEMAND FOR JURY TRIAL

91. Plaintiff hereby requests a jury trial on all issues raised in the complaint.

Dated: May 22, 2019

Respectfully submitted By:

The Law Offices of Sommer Miller, LLC
Sommer Miller, Esq.
Attorney ID 315971
2 Bala Plaza, Suite 300
Bala Cynwyd, PA 19004

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | From: |
|---|---|
| Steffany P. Purvis<br>1612 Whitpain Hills<br>Blue Bell, PA 19422 | Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2018-04994 | Legal Unit,<br>Legal Technician | (215) 440-2828 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_Jamie R. Williamson_      February 21, 2019

Enclosures(s)    Jamie R. Williamson,    (Date Mailed)
District Director

cc:    Patricia F. Weisberg, Senior Counsel (for Respondent)